### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JANE DOE** | * | |
| c/o Cockey, Brennan & | * | |
| Maloney, P.C. | * | |
| 313 Lemmon Hill Lane | * | |
| Salisbury, Maryland 21801 | * | |
| *Plaintiff* | * | **CASE NO.:**_____ |
| **v.** | * | |
| **GUYVENSON SENECHARLES** | * | |
| 201 College Park Drive, Suite 5 | * | |
| Georgetown, Delaware 19947 | * | |
| **And** | * | |
| **THE CELLULAR** | * | |
| **CONNECTION, LLC** | * | |
| 525 Congressional Boulevard | * | |
| Carmel, Indiana 46032 | * | |
| **SERVE:** | * | |
| The Corporation Trust | * | |
| Incorporated | * | |
| 2405 York Road, Suite 201 | * | |
| Lutherville Timonium, MD | * | |
| 21093 | * | |
| *Defendant* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### <u>COMPLAINT</u>

Plaintiff Jane Doe ("**Ms. Doe**") through counsel makes this Complaint against Defendants Guyvenson Senecharles ("**Mr. Senecharles**") and The Cellular Connection, LLC ("**TCC**") for violation of the Violence Against Women Act, pursuant to 15 U.S.C. § 6851, Negligent Supervision and Retention, and

Intrusion Upon Seclusion, and seeks liquidated damages, compensatory damages, punitive damages, attorneys' fees, and costs.

## PARTIES

1. Plaintiff Ms. Doe is over the age of 18 and resided in Worcester County, Maryland during the events giving rise to this case. Ms. Doe remains a resident of Worcester County, Maryland.

2. Defendant Mr. Senecharles is over the age of 18, and is a resident of Sussex County, Delaware.

3. Defendant TCC is a limited liability company registered to do business in the State of Maryland with its principal place of business in Carmel, Indiana. TCC is a Verizon authorized retailer with over 750 locations nationwide. As a Verizon authorized retailer, TCC is licensed to sell Verizon phones, plans, and accessories.

## JURISDICTION AND VENUE

4. This is a civil action arising under the laws of the United States. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court has pendant jurisdiction over Plaintiff's claims under State law, as those claims arise from the same facts and involve similar issues.

5. The acts and omissions giving rise to Ms. Doe's claims occurred in Worcester County, Maryland, and there is no other district in which this action may be brought. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

6.      On Friday, August 2, 2024, Ms. Doe and her family members, Dawn, Ron, Jake, and Maxx (collectively the "**Family**") visited the TCC authorized Verizon Store located at 11347 Samuel Bowen Boulevard, Berlin, Maryland 21811 to upgrade their mobile phones as part of a promotion offered by Verizon.

7.      Upon arriving at the TCC Verizon Store in Berlin, Maryland around 6:00 p.m., the Family was assisted by Mr. Senecharles, an Area Sales Consultant who traveled among the TCC Verizon stores in the region.

8.      Ms. Doe, Ron, Jake, and Maxx turned over their phones to Mr. Senecharles for processing and included a sticky note which included their phone passcodes.

9.      Dawn did not turn her phone over to Mr. Senecharles at this time, as the new phone she desired was not in stock. Instead, Mr. Senecharles assured Dawn that he would order her new phone, and she could pick it up the following week.

10.     That night, Mr. Senecharles began the phone upgrades for Ms. Doe, Ron, Jake, and Maxx. Specifically, Mr. Senecharles set up the new phones belonging to Ms. Doe, Ron, Jake, and Maxx by transferring all the data from their old phones to their new phones. While Mr. Senecharles was upgrading the phones belonging to Ms. Doe, Ron, Jake, and Maxx, he urged the Family to leave and come back to pick up their new phones later that night.

11.     Upon the recommendation of Mr. Senecharles, the Family left the TCC Verizon store in Berlin, Maryland around 7:30 p.m. to attend dinner.

12. The Family returned to the TCC Verizon store in Berlin, Maryland around 9:30 p.m., at which time Mr. Senecharles was finishing up the phone transfers for Ms. Doe, Jake, and Maxx. Unfortunately, Ron's phone transfer was not yet completed. Mr. Senecharles informed the Family that he would need to keep Ron's phone overnight so it could stay connected to Wi-Fi.

13. Ms. Doe, Jake, and Maxx each received their new phone that night. Ms. Doe, Jake, and Maxx also removed the sticky notes which contained their phone passcodes when they got their new phones.

14. Mr. Senecharles informed the Family that, as a part of Verizon's upgrade deal, they would have to "turn in" their old phones. As a result, Mr. Senecharles kept five (5) phones belonging to the Family – Ron's new phone and four (4) old phones belonging to Ms. Doe, Ron, Jake, and Maxx.

15. When the Family picked up their phones on the night of Friday, August 2, 2024, Mr. Senecharles also informed them that they would have to pay $840.00 for the phone upgrades, which the Family paid that night.

16. The next morning, on Saturday, August 3, 2024, Ron's phone transfer was completed and Ron picked up his new phone from Mr. Senecharles.

17. Subsequently, Mr. Senecharles messaged Ron on two (2) separate occasions requesting the passcodes for the phones belonging to Ms. Doe, Jake, and Maxx.

18. On Sunday, August 4, 2024, Ms. Doe discovered sexually explicit photographs and videos in her camera roll on her new phone. The sexually

explicit photographs and videos were of Ms. Doe and her boyfriend when she was approximately fifteen (15) to seventeen (17) years old.

19.    The sexually explicit photographs and videos of Ms. Doe were previously located in a hidden and locked album on her old phone and were not present in her camera roll until after Mr. Senecharles had access to her phone while the Family was at dinner on Friday, August 2, 2024.

20.    Upon information and belief, Mr. Senecharles accessed the hidden and locked album on Ms. Doe's old phone by using Ms. Doe's phone passcode, which was provided to Mr. Senecharles on a sticky note on Friday, August 2, 2024.

21.    Upon information and belief, Mr. Senecharles selected specific explicit photographs and videos depicting Ms. Doe in a sexual nature. Indeed, not all of the photographs and videos located in the hidden and locked album were found on Ms. Doe's camera roll. Clearly, Mr. Senecharles accessed, viewed, and selected which photographs and videos appealed to him the most.

22.    Upon information and belief, Mr. Senecharles disclosed the sexually explicit photographs and videos which appeared in Ms. Doe's camera roll.

23.    Ms. Doe informed her parents, Dawn and Ron, about the sexually explicit photographs and videos found on her phone on the night of Sunday, August 4, 2024.

24.    Previously, Dawn and Ron had informed their oldest daughter, Devynn, about the Verizon promotion and urged her to upgrade her phone. After Ms. Doe found the sexually explicit photographs and videos on her new phone,

Dawn and Ron informed Devynn that something had happened with Ms. Doe's phone upgrade, but did not inform her of specifics.

25.     As a result, Devynn went to the TCC Verizon store in Berlin, Maryland on Monday, August 5, 2024, to upgrade her phone. Devynn was assisted by Victoria Holland ("**Ms. Holland**"), another Area Sales Consultant, and the mother of Mr. Senecharles's child.

26.     Throughout Devynn's interaction with her, Ms. Holland appeared nervous, anxious, and on edge. Additionally, she made numerous phone calls in the back room.

27.     Devynn received her new phone and turned in her old phone to Ms. Holland.

28.     Also on Monday, August 5, 2024, Dawn called the Worcester County Child Advocacy Center ("**Cricket Center**"), where she spoke with social worker Dawn Blades ("**Ms. Blades**"). At the time, Dawn was attempting to prevent the sexually explicit photographs and videos of Ms. Doe from being disseminated to anyone else, including online. Ms. Blades informed Dawn that a detective would be calling her later that day.

29.     Detective Viki Martin ("**Detective Martin**") from the Worcester County Sheriff's Office's ("**WCSO**") Child Advocacy Unit called Dawn on the afternoon of Monday, August 5, 2024. Detective Martin told Dawn that Ms. Doe should stop using her new phone, acquire a burner phone, and turn her new phone in to the WCSO for processing.

30. Following Dawn's phone call with Detective Martin, Ron traveled to the TCC Verizon Store in Berlin, Maryland to collect the Family phones being held by Mr. Senecharles.

31. Upon Ron's arrival at the TCC Verizon Store in Berlin, Maryland, he was informed that Mr. Senecharles was working at the TCC Verizon Store in Georgetown, Delaware, located at 201 College Park Drive, Suite 5, Georgetown, Delaware 19947. Additionally, the Family phones were not found in the TCC Verizon Store in Berlin, Maryland.

32. Ron traveled to the TCC Verizon Store in Georgetown, Delaware, but Mr. Senecharles had already left for the day. The store manager called Mr. Senecharles to explain that Ron wanted his family's old phones returned to him. Mr. Senecharles reported that he had three (3) of the Family's phones on his person in his car and that he was on his way to Salisbury, Maryland to attend his son's sporting event.

33. Upon provocation by the store manager, Mr. Senecharles returned to the TCC Verizon Store in Georgetown, Delaware, at which time he surrendered the three (3) phones on his person to Ron. The three (3) phones returned to Ron belonged to Ms. Doe, Jake, and Maxx.

34. After receiving Ms. Doe's old phone from Mr. Senecharles, Dawn performed a backup of the phone, which showed that Ms. Doe's camera roll (photos app) was active from 8:00 p.m. to 9:00 p.m. on Friday, August 2, 2024, when the Family was at dinner.

35.    The following week, Mr. Senecharles continued messaging Dawn about when her new phone would be delivered. Dawn and Ron went to pick up Dawn's new phone from the TCC Verizon Store in Berlin, Maryland on Friday, August 9, 2026.

36.    Subsequently, Detective Maykel Suarez ("**Detective Suarez**") with the WCSO and Cricket Center interviewed Dawn and Ms. Doe, in-person, at the Family's home. Ron and Devynn were also interviewed over the phone.

37.    Following the interview, Detective Suarez collected the Family's phones for processing.

38.    While the Family's phones were being processed by the WCSO, Dawn called Verizon's corporate customer service line. The customer service representative confirmed that the trade-in promotion exercised by the Family did not require them to turn in their old phones, nor did it require an upfront payment of $840.00. Indeed, the $840.00 payment made by the Family on Friday, August 2, 2024, did not appear on their Verizon account.

39.    After the Family's phones had been processed, the WCSO performed a "sting," where they had the Family return all of their old phones to Mr. Senecharles at the TCC Verizon Store in Berlin, Maryland. After the phones had been delivered to Mr. Senecharles, officers from the WCSO went into the TCC Verizon Store in Berlin, Maryland to talk to Mr. Senecharles.

40.    While at the TCC Verizon Store in Berlin, Maryland, the officers also spoke with Mr. Senecharles's direct supervisor, Quashawn Willis ("**Mr. Willis**"). According to Mr. Willis, it is against company protocol to retain customers'

phones overnight. Additionally, it was determined that the Family did not have to turn their old phones in as a part of Verizon's deal.

41.     Subsequently, the Family's phones remained locked in a safe at the TCC Verizon Store in Berlin, Maryland for two (2) days while the WCSO coordinated with Verizon to ensure that the old phones did not have to be turned in as a part of the promotion.

42.     Two (2) days later, Verizon confirmed that the old phones belonging to the Family did not need to be collected. As a result, the officers retrieved all of the Family's phones being held at the TCC Verizon Store in Berlin, Maryland and returned them to Dawn and Ron.

43.     As a result of the investigation, Mr. Senecharles was transferred to the TCC Verizon Store in Georgetown, Delaware full-time.

44.     Upon information and belief, Mr. Senecharles has been investigated by the WCSO and the Cricket Center for instances with similar factual circumstances in the past.

45.     Upon information and belief, Mr. Senecharles continues to work at the TCC Verizon Store in Georgetown, Delaware.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE VIOLENCE AGAINST WOMEN ACT
### (15 U.S.C. § 6851)
### (Against all Defendants

46.     The allegations in Paragraphs 1 – 45 are incorporated by reference.

47.     TCC has over 750 locations in the United States.

48.     Mr. Senecharles is an employee of TCC as an Area Sales Consultant who traveled among the TCC Verizon stores on the Eastern Shore of Maryland and Delaware.

49.     During his employment on August 2, 2024, Mr. Senecharles accessed a private, hidden, and locked album on Ms. Doe's phone in order to obtain her sexually explicit photographs and videos, which were taken when she was approximately fifteen (15) to seventeen (17) years old.

50.     The sexually explicit photographs and videos of Ms. Doe and her boyfriend retrieved by Mr. Senecharles from Ms. Doe's phone constitute intimate visual depictions pursuant to 15 U.S.C. § 6851(a)(5).

51.     Mr. Senecharles retrieved the intimate visual depictions of Ms. Doe and her boyfriend without the consent of Ms. Doe or her boyfriend. The intimate visual depictions were located in a hidden and locked album on Ms. Doe's phone and, consequently, Mr. Senecharles knew that Ms. Doe did not consent to accessing or sharing the images and/or videos.

52.     Upon information and belief, Mr. Senecharles disclosed the intimate visual depictions of Ms. Doe and her boyfriend; specifically, the photos and videos which were previously hidden and now appeared in Ms. Doe's camera roll.

53.     Mr. Senecharles retrieved and disclosed the intimate visual depictions of Ms. Doe and her boyfriend during the course of his employment with TCC; these actions directly affected interstate commerce.

54.     The above-described acts of Mr. Senecharles were committed within the scope of his employment with TCC, in that he committed them while on duty,

inside TCC's place of business, and with the knowledge and approval of his supervisors and/or to further their business interests.

55.    As Mr. Senecharles' employer, TCC is responsible for all of the acts committed by Mr. Senecharles within the scope of his employment.

56.    As a result of this incident, Ms. Doe has suffered severe emotional distress.

57.    As a result of this incident, Ms. Doe has been forced to expend attorney's fees and Court costs.

WHEREFORE, Plaintiff, Ms. Doe, respectfully requests that this Honorable Court:

A.    Pursuant to 15 U.S.C. § 6851(3)(A)(i), award Ms. Doe liquidated damages in the amount of $150,000.00;

B.    Pursuant to 15 U.S.C. § 6851(3)(A)(i), award Ms. Doe her reasonable attorney's fees and Court costs; and

C.    Grant such other and further relief as justice so requires.

### COUNT II: NEGLIGENT RETENTION AND SUPERVISION
### (Against Defendant TCC)

58.    The allegations in Paragraphs 1 – 57 are incorporated by reference.

59.    TCC has over 750 locations in the United States.

60.    Mr. Senecharles is an employee of TCC as an Area Sales Consultant who traveled among the TCC Verizon stores on the Eastern Shore of Maryland and Delaware.

61. During his employment on August 2, 2024, Mr. Senecharles accessed a private, hidden, and locked album on Ms. Doe's phone in order to obtain her sexually explicit photographs and videos, which were taken when she was approximately fifteen (15) to seventeen (17) years old.

62. Upon information and belief, Mr. Senecharles disclosed the sexually explicit photographs and videos of Ms. Doe; specifically, the photos and videos which were previously hidden and now appeared in Ms. Doe's camera roll.

63. Mr. Senecharles also improperly retained the phones belonging to the Family for several days and extorted $840.00 from the Family.

64. TCC had a duty to use reasonable care to select an Area Sales Consultant for the Eastern Shore of Maryland and Delaware who was competent and fit to perform the duties of an Area Sales Consultant.

65. Upon information and belief, Mr. Senecharles has been investigated by the WCSO and the Cricket Center for instances with similar factual circumstances in the past.

66. TCC had actual or constructive knowledge that Mr. Senecharles had a predilection for improperly accessing information on customers' phones; specifically, information concerning a sexual nature.

67. TCC breached their duty of care by failing to act on their actual or constructive knowledge of Mr. Senecharles' prior conduct, which was the direct and proximate cause of Ms. Doe's injuries.

68. As a result of TCC's negligent retention and supervision of Mr. Senecharles, Ms. Doe suffered severe emotional distress.

WHEREFORE, Plaintiff, Ms. Doe, respectfully requests that this Honorable Court:

A.      Award Ms. Doe compensatory damages; and

B.      Grant such other and further relief as justice so requires.

### COUNT III: INTRUSION UPON SECLUSION
### (Against All Defendants)

69.     The allegations in Paragraphs 1 – 68 are incorporated by reference.

70.     During the course of his employment with TCC, Mr. Senecharles intentionally, and without authorization, broke into a private, hidden, and locked album on Ms. Doe's phone in order to recover and disclose her sexually explicit photographs and videos.

71.     The private, hidden, and locked album on Ms. Doe's phone constitutes her private affairs.

72.     The sexually explicit photographs and videos recovered and disclosed by Mr. Senecharles were highly offensive in nature and were taken when Ms. Doe was approximately fifteen (15) to seventeen (17) years old.

73.     A reasonable person would be highly offended by Mr. Senecharles's actions in improperly accessing and disclosing Ms. Doe's sexually explicit photographs and videos. Further, the fact that Ms. Doe was underage in the sexually explicit photographs and videos makes Mr. Senecharles's actions even more offensive to a reasonable person.

74.     The above-described acts of Mr. Senecharles were committed within the scope of his employment with TCC, in that he committed them while on duty, inside TCC's place of business, and in furtherance of TCC's interests.

75.     As Mr. Senecharles' employer, TCC is responsible for all of the acts committed by Mr. Senecharles within the scope of his employment.

76.     Mr. Senecharles's conduct was willful, wanton, and made with malicious intent.

77.     As a result of this incident, Ms. Doe has suffered severe emotional distress.

78.     As a result of this incident, Ms. Doe has been forced to expend attorney's fees and Court costs.

WHEREFORE, Plaintiff, Ms. Doe, respectfully requests that this Honorable Court:

A.     Award Ms. Doe compensatory damages;

B.     Award Ms. Doe punitive damages;

C.     Award Ms. Doe her reasonable attorney's fees and Court costs; and

D.     Grant such other and further relief as justice so requires.

/s/ Robin R. Cockey, Esquire

_____

ROBIN R. COCKEY, ESQUIRE
Federal Bar No.: 02657
COCKEY, BRENNAN & MALONEY, P.C.
313 Lemmon Hill Lane
Salisbury, Maryland 21801
Telephone: 410-546-1750
Fax: 410-546-1811
Email: rrcesq@cbmlawfirm.com
*Attorney for Plaintiff*